IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WAGNER ZIP-CHANGE, INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| VIDON PLASTICS, INC., a Michigan corporation; and GRAPHIC SOLUTIONS GROUP, INC., a Texas corporation, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT

Plaintiff Wagner Zip-Change, Inc., by and through its undersigned attorneys FisherBroyles LLP, for its complaint against defendants Vidon Plastics, Inc. and Graphic Solutions Group, Inc. ("Defendants"), alleges as follows:

## PARTIES

1.      Plaintiff Wagner Zip-Change, Inc. ("Wagner" or "Plaintiff") is an Illinois corporation with its principal place of business in Melrose Park, Illinois.

2.      Defendant Vidon Plastics, Inc. ("Vidon") is a Michigan corporation with its principal place of business in Lapeer, Michigan.

3.      Defendant Graphic Solutions Group, Inc. ("GSG") is a Texas corporation with its principal place of business in Dallas, Texas.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121 in that Plaintiff's claims arise under the Lanham Act, 15 U.S.C. §§ 1114

and 1125(a). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. This Court also has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332, in that Plaintiff, on the one hand, and both Defendants, on the other, are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Defendants are subject to personal jurisdiction in this district on the basis that they are doing business in the State of Illinois by, among other things, making their products and services available for sale throughout the United States, including within and into Illinois.

7. Defendants are also subject to personal jurisdiction in this district in that, among other things, they have transacted business in Illinois, engaged in tortious acts in Illinois, engaged in conduct directed at Illinois, and have sufficient minimum contacts with Illinois such that subjecting them to jurisdiction here is consistent with due process. Plaintiff's injuries arise out of Defendants' Illinois related activities.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and the Defendants are subject to personal jurisdiction here.

## ALLEGATIONS COMMON TO ALL COUNTS

**Background**

9. Plaintiff Wagner traces its history to 1928 in Chicago, where Irwin Wagner started Wagner Sign Service, an outdoor sign maintenance and cleaning company. Wagner was a relentless innovator, and invented the concept of changeable copyboard letters in the 1930s, including the first slotted marquee letters in 1935. In 1942, Wagner invented the first injection molded plastic letters. Lightweight and practically indestructible, Wagner's three-dimensional

letters and numbers quickly became the product of choice for theater marquees, drive-ins, and other businesses across the country.

10.     Wagner continued to innovate and evolved over the years into the company it is today, Wagner Zip-Change.  Wagner now sells its trademarked Jewelite® Trim molding; its trademarked Zip-Change® flat marquee sign and reader board lettering, tracking, and mounting systems; its patented and trademarked Zip-Lite® reverse copy letter system; its original Wagner three-dimensional injection molded plastic lettering system; and related tools and accessories to distributors around the world.

11.     Wagner's Jewelite® Trim is a plastic molding that adds new dimension to cut-out sign letters.  Developed by Wagner in the early 1980s, Jewelite® Trim, also know as "trim cap" was the first and original trim cap product in the United States.  It soon became the overwhelming market and industry leader for sign trim cap products.

12.     Jewelite® was registered with the United States Patent and Trademark Office on March 25, 1975, Registration No. 1,007,380.  Wagner acquired an exclusive license to use the Jewelite® mark in 1987 and has been the exclusive licensee of the mark since that time.  Wagner has invested substantial effort and resources over the years to promote the Jewelite® trademark and the trim cap products sold under that mark.

13.     As a result, the Jewelite® name and mark became well known to virtually everyone in the outdoor sign industry and became synonymous with sign trim cap and Wagner's Jewelite® Trim in particular.

**Vidon's Role as Manufacturer of Wagner's Products**

14.     Beginning in 1987 and continuing through the present, Wagner contracted with defendant Vidon to have Vidon fabricate and manufacture Wagner's Jewelite® Trim products according to Wagner's designs and specifications and using dies owned by Wagner.

15.     Throughout their relationship, Wagner and Vidon agreed that the customers for Wagner's Jewelite® Trim were Wagner's customers, not Vidon's, that the customers' identities, contact information, and purchasing habits were confidential information belonging to Wagner, and not to be used or disclosed by Vidon for its own benefit.

16.     Throughout their relationship, Wagner and Vidon agreed that Vidon would not solicit, sell to, or manufacture trim cap products for any of Wagner's customers.  Those terms were incorporated into written supply agreements in effect from time to time over the years, the most recent of which was dated November 21, 2013.  Vidon terminated the November 21, 2013 written Supply Agreement effective as of December 31, 2019.

17.     Despite the termination of the written Supply Agreement, Wagner and Vidon agreed to continue their same relationship, with Vidon manufacturing the Jewelite Trim products for Wagner and Wagner purchasing those products from Vidon.  As part of that agreement, Vidon expressly agreed that, in exchange for Wagner continuing to purchase the trim products from Vidon and for as long as Vidon continued to do so, Vidon would not compete with Wagner by manufacturing the Jewelite® Trim products, or products using the same design and specifications, for itself or others, and that it would not solicit or sell such products to Wagner's customers.

4

18.     Pursuant to those verbal agreements, between January 1, 2020 and the present, Vidon has continued to manufacture the Jewelite® Trim products for Wagner and Wagner has continued to purchase those products from Vidon.

**Defendants' Unfair Competition**

19.     Beginning in or about January 2021, Vidon has breached its agreement not to compete with Wagner with respect to the Jewelite® Trim products by manufacturing the identical products for itself, using Wagner's designs and specifications, and selling those products to Wagner's customers under the Vidon name.

20.     Vidon has also engaged in an ongoing pattern of unfair competition and deceptive trade practices aimed at misrepresenting Vidon's trim products, causing confusion in the marketplace, and unfairly competing with Wagner.  These include false and misleading statements regarding Vidon's trim products and other deceptive practices likely to cause confusion in the marketplace as to Vidon's affiliation or association with Wagner and its Jewelite® Trim products, and the origin, sponsorship, or approval of Vidon's products.

21.     For example, Vidon has promoted its Vidon's trim products in a manner designed to intentionally create the false impression that they are Wagner's Jewelite® Trim products but merely under a new name.  The purpose and intent of these statements has been to cause customers to believe that they are purchasing the original Jewelite® Trim products from Wagner, just under a new name, Vidon, when that is not the case.

22.     Upon information and belief, Vidon has spread its false, misleading, and deceptive statements to various distributors, including GSG, who in turn have used those statements to promote and sell Vidon's trim products to unsuspecting customers who are being led to believe that they are Wagner's original Jewelite® Trim products, and that Wagner just changed the name from Jewelite® to Vidon.

5

23.     For example, Vidon has adopted the following logo and tag line to promote its trim cap products:



24.     As stated above, the "original" trim cap was developed and marketed by Wagner under its Jewelite® trademark since the 1980s.  Vidon began manufacturing and selling its knock-off trim cap only very recently, in or about January 2021.  Vidon's use of the term "ORIGINAL TRIM CAP" in its name and logo is false and misleading in that Jewelite® was in fact the "original" trim cap decades ago, and Vidon's brand is new to the market.

25.     Vidon has furthered this deception and confusion by promoting its trim cap as simply the "same product" as Jewelite® but merely under a "new name."

26.     One example of these misleading statements appeared recently on the website of Grimco, Inc. ("Grimco"), which is or was a major long-time distributor of Wagner's Jewelite® Trim products.

27.     Grimco recently started marketing Vidon's trim products on Grimco's website as "VIDON ORIGINAL TRIM CAP (formerly Jewelite)" and stating that Vidon is a "NEW NAME / SAME GREAT QUALITY," as reflected in this screenshot from Grimco's website:



28.     Upon information and belief, the false and misleading statements on Grimco's website were based on information provided and statements made to Grimco by Vidon, which sought to promote the false perception in the minds of distributors and their customers that Vidon's trim was "formerly Jewelite,®" and that Vidon was just a "new name" for Jewelite.®

29.     Defendant GSG, another long-time distributor of Wagner's Jewelite® Trim products, posted what appears to be a Vidon-produced product flyer on its website, a copy of which is attached hereto as Exhibit A.

30.     That flyer also contained the misleading Vidon logo "VIDON ORIGINAL TRIM CAP" and the misleading statement that Vidon is a "NEW NAME / SAME GREAT PRODUCT!." (Ex. A.)

31.     The Vidon flyer WENT on to state that

7

> "VIDON'S ORIGINAL TRIM CAP is the Sign Industry's standard for adding dimension and structural integrity to your channel letters. With 30+ years of production, Vidon's ORIGINAL Trim Cap can be trusted like the trim cap you have been using for years."

(Ex. A.)

32. These statements are also false and misleading and likely to cause confusion in the marketplace. For example, only Jewelite®, not Vidon, has been the "Sign Industry's standard" and had "30+ years of production." Combined with "NEW NAME, SAME GREAT PRODUCT!," these statements have the purpose and effect of giving the false impression that Vidon trim cap is just a new name for Jewelite®.

33. GSG, which has been a long-time distributor of Wagner's Jewelite Trim products, knows that the above statements on its website were false, misleading, deceptive, and likely to cause confusion among customers.

34. Following a request from Wagner, GSG removed some of the offending statements from its website, but refused to remove others. GSG continues, for example, to falsely promote Vidon's trim products as the "**ORIGINAL Trim Cap**" *See, e.g.,* https://www.gogsg.com/2319871/Product/Vidon_Plastics

35. Vidon has also sought to cause confusion between the sponsorship and source of its products by copying and using the identical packaging and package design and some of the identical wording on its packaging as used by Wagner.

36. The following comparison shows Wagner's Jewelite® Trim packaging on the left and Vidon's trim cap packaging on the right:



37. GSG and other distributors have sold and distributed Vidon's trim products using the Vidon packaging pictured above.

**Tortious Interference**

38. Wagner sells its products almost exclusively through various distributors, who purchase from Wagner and sell directly to customers such as sign companies. Wagner has had long-term relationships with all of its largest distributors and a legitimate expectancy of continuing to do business with them.

39. Vidon has been aware at all relevant times of Wagner's relationships with and expectancies of continuing to do business with its long-time distributors.

40. Vidon has tortiously interfered with Wagner's relationships with at least four distributors, Grimco, GSG, Reece Supply Company ("Reece"), and Tubelite, by soliciting those distributors and causing them to cease some or all purchases from Wagner and purchase Vidon's trim products instead.

9

41. Vidon has also tortiously interfered with Wagner's contractual relationship with at least one distributor, Grimco.

42. Grimco and Wagner are parties to a written contract as part of Wagner's "Loyalty Program" (the "Contract"). A copy of the Contract is attached hereto as Exhibit B. Under the Contract, Wagner agreed to give Grimco a 3% discount on all purchases, payable as a quarterly rebate, and to extend more favorable payment terms.

43. In exchange, Grimco agreed "to exclusively purchase, distribute and promote Wagner Sign Trim Products" and that it would "not purchase, distribute or promote any other competitive Sign Trim Products" during the term of the Contract.

44. The Grimco Contract was most recently renewed on January 29, 2019 for another three-year term, through at least January 28, 2022, and with automatic renewals after that.

45. Vidon was at all relevant times aware of the Contract.

46. Vidon tortiously interfered with the Contract by soliciting Grimco to purchase, distribute, and promote Vidon's trim products.

47. As a result of Vidon's interference, Grimco breached the Contract by purchasing Vidon's trim products, distributing and selling those products to customers, and promoting the products on Grimco's website.

**Harm to Wagner**

48. Defendants' wrongful conduct has caused and threatens to continue to cause serious damage and irreparable harm to Wagner, including without limitation loss of good will and competitive advantages, lost customers and customer relationships, lost market share, lost sales and revenue, and irreparable harm from defendants' unfair competition and deceptive practices.

10

49.     Wagner has no adequate remedy at law for the harm and threatened harm caused by Defendants' actions.  If allowed to continue, Defendants' actions threaten to put Wagner out of business.

## COUNT I
### (Lanham Act § 43(a) – Defendants Vidon and GSG)

50.     Wagner realleges and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

51.     The conduct of Defendants is in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

52.     As alleged above, Defendants used in commerce and in connection with goods, services, and containers for goods, words, terms, names, symbols, and devices, and combinations thereof, as well as false designations of origin and false and misleading descriptions and representations of fact, including without limitation the following:

   a) Use by Defendants of the false and misleading Vidon logo and tag line stating that Vidon's products are the "**ORIGINAL Trim Cap;"**

   b) False and misleading statements by Defendants that Vidon is just a "New Name" but the "Same Great Product!";

   c) False and misleading statements by Defendants that Vidon is the "**ORIGINAL Trim Cap**" and the "Sign Industry's standard" with "30+ years of production;" and

   d) Use by Defendants of the packaging for Vidon's trim products, which is identical in many respects to Wagner's Jewelite® packaging and designed to mislead customers and cause further confusion.

53.     Upon information and belief, Vidon also provided information and made statements to Grimco to create the false perception in the minds of Grimco and its customers that Vidon's trim was "formerly Jewelite,®" and that Vidon was just a "new name" for Wagner's Jewelite® trim products.

11

54.     Defendants' conduct and statements have caused and are likely to cause confusion or mistake, or to deceive customers and potential customers as to Vidon's affiliation, connection, or association with Wagner or others, or as to the origin, sponsorship, or approval of Vidon's products, services, or other commercial activities.

55.     Vidon and GSG made the above statements and engaged in the above deceptive conduct with actual intent to mislead and deceive members of the public, including Wagner's actual and potential distributors and customers.

56.     Defendants' actions occurred in and affect interstate commerce.  The Grimco and GSG websites are available worldwide, including throughout the United States.  Wagner markets and sells its products throughout the United States and other parts of the world.  Defendants' marketing and sales efforts likewise are aimed at the United States and other markets.

57.     Wagner has been and is likely to be damaged by Defendants' conduct, including irreparable harm caused by the actual or potential loss of customers, sales, customer relationships, market share, and good will.

58.     Wagner has no adequate remedy at law for Defendants' wrongful actions.

59.     This is an exceptional case entitling Wagner to recover its costs and attorneys' fees in that Defendants' conduct has been willful, intentional, illegal, unusually egregious, and in total disregard for Wagner's rights and the rights of others.

**COUNT II**
**(Illinois Uniform Deceptive Trade Practices Act – Defendants Vidon and GSG)**

60.     Wagner realleges and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

61.     Defendants' conduct as alleged above constitutes deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, in that it:

a) causes confusion or misunderstanding as to the source, sponsorship, approval, or certification of Vidon's goods and services;

b) causes likelihood of confusion or misunderstanding as to the affiliation, connection, association or certification by others;

c) represents that Vidon's products and services have sponsorship and approval that they do not have; and

d) creates a likelihood of confusion and misunderstanding.

62.     Wagner has been or is likely to be damaged by Defendants' conduct, including irreparable harm caused by the actual or potential loss of customers, sales, market share, customer relationships, and good will.

63.     Wagner has no adequate remedy at law for Defendants' wrongful conduct.

64.     Wagner is entitled to recover its costs and attorneys' fees in that Defendants' conduct has been willful.

## COUNT III
### (Breach of Contract – Defendant Vidon)

65.     Wagner realleges and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

66.     As part of their ongoing relationship, Wagner and Vidon agreed that the customers for Wagner's Jewelite® Trim were Wagner's customers, not Vidon's, and that the customers' identities, contact information, and purchasing habits were confidential information belonging to Wagner, and not to be used or disclosed by Vidon for its own benefit.

67.     Wagner and Vidon also agreed that Vidon would not compete with Wagner by manufacturing the Jewelite® Trim products, or products using the same or similar designs and specifications, for itself or others, and that it would not solicit or sell such products to Wagner's customers.

13

68.     The designs and specifications and tools and dies used to manufacture Wanger's Jewelite® products were also owned by and proprietary to Wagner.  Wagner and Vidon agreed that Vidon would be entitled to use the designs, specifications, tools and dies exclusively for the production of Wagner's Jewelite® products for sale to Wagner, and that Vidon would not use the designs, specifications, tools or dies to manufacture the same or similar products for itself or other customers.

69.     The above terms were expressly agreed to verbally by the parties.  They were also expressed or acknowledged partially in writing at different times over the years.

70.     The above terms were material, and Wagner would not have agreed to continue purchasing from Vidon but for Vidon's agreement to those terms.

71.     Pursuant to and as consideration for Vidon's agreement to the above terms, Wagner has continued to allow Vidon to manufacture the Jewelite® Trim products for Wagner and Wagner has continued to purchase those products from Vidon.

72.     The above terms formed a legal and binding contract between the parties.

73.     Beginning in or about at least January 2021, Vidon has breached its contractual agreements with Wagner by, among other things, using Wagner's designs, specifications, tools and dies, as well as Wagner's confidential customer information, to compete with Wagner with respect to the Jewelite® Trim products by manufacturing knock-off products for itself, using Wagner's designs, specifications, tools and dies, and selling those products to Wagner's customers under the Vidon name.

74.     Wagner has complied with all obligations required of it under its contract with Vidon.

14

75.     As a direct and proximate result of Vidon's breaches, Wagner has been damaged in amounts to be determined at trial, including irreparable harm caused by the loss of customers, good will, market share, and competitive advantages.

**COUNT IV**
**(Tortious Interference With Contract – Defendant Vidon)**

76.     Plaintiffs reallege and incorporate by reference the prior allegations of this Complaint as if fully set forth herein.

77.     Vidon has tortiously interfered with Wagner's contractual relationships with Grimco.

78.     Vidon was at all relevant times aware of Wagner's Contract with Grimco.

79.     Vidon tortiously interfered with the Grimco Contract by soliciting Grimco to purchase, distribute, and promote Vidon's trim products.

80.     Vidon's interference was tortious and unlawful in that Vidon breached its own agreement with Wagner not use Wagner's confidential customer information to solicit or sell to Wagner's customers, not to sell the same or similar trim products to Wagner's customers, and used false and misleading statements and deceptive conduct, as outlined above, to promote its trim products and cause confusion as to the source and sponsorship of those products.

81.     As a result of Vidon's interference, Grimco breached the Contract by purchasing Vidon's trim products, distributing and selling those products to customers, and promoting the products on Grimco's website.

82.     As a direct and proximate result of Vidon's conduct, Wagner has been damaged in amounts to be determined at trial, including irreparable harm caused by the loss of customers, market share, good will, competitive advantages, and customer relationships.

83.     Vidon's misconduct was intentional, outrageous, and in reckless disregard of Wagner's rights, entitling Wagner to punitive damages in amounts to be determined at trial, as necessary to deter Vidon and others from such outrageous and harmful conduct.

**COUNT V**
**(Tortious Interference With Prospective Economic Advantage – Defendant Vidon)**

84.     Wagner realleges and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

85.     Wagner had and has a reasonable business expectancy and ongoing relationship with its distributors and other customers, including Grimco, GSG, Reece, and Tubelite.

86.      Vidon had and has knowledge of Wagner's business expectancies and relationships.

87.     Vidon wrongfully and intentionally, through improper means, interfered with Wagner's expectancies by, among other things, using Wagner's confidential information to contact and solicit Wagner's customers, including Grimco, GSG, Reece, and Tubelite, in violation of Vidon's commitments to and agreements with Wagner.

88.     Vidon also wrongfully and intentionally, through improper means, interfered with Wagner's expectancies by, among other things, engaging in the acts of unfair competition, and unlawful and deceptive practices alleged above, designed to unfairly compete with Wagner and interfere with Wagner's relationships and future business with its customers.

89.     Vidon's intentional interference has caused the loss of economic expectancies through the loss of customers and good will, and threatens to cause the loss of expectancies in relationships and future sales with customers.

90.     As a direct and proximate result of Vidon's conduct, Wagner has been damaged in amounts to be determined at trial, including lost sales and profits and irreparable harm caused

by the disclosure and use of Wagner's confidential information and loss of customer

relationships, market share, competitive advantages, and good will.

91.     Vidon's misconduct was intentional, outrageous, and in reckless disregard of

Wagner's rights, entitling Wagner to punitive damages in amounts to be determined at trial, as

necessary to deter Vidon and others from such outrageous and harmful conduct.

**COUNT VI**
**(Unfair Competition – Defendants Vidon and GSG)**

92.     Plaintiffs reallege and incorporate by reference the prior allegations of this

Complaint as if fully set forth herein.

93.     Defendants Vidon and GSG's conduct as alleged herein constitutes unfair

competition in that such conduct involves the use and implementation of wrongful, unlawful, and

unfair business practices in violation of Wagner's established rights and which are designed to

provide and have provided Defendants with unlawful and unfair competitive advantages.

94.     Defendants have and will continue to benefit from such conduct.

95.     As a direct and proximate result of Defendants' conduct, Wagner has suffered

damages in an amount to be determined at trial, including lost sales and profits and irreparable

harm caused by the loss of customers, sales, market share, competitive advantages, and good

will.

96.     Defendants' misconduct was intentional, outrageous, and in reckless disregard of

Wagner's rights, entitling Wagner to punitive damages in amounts to be determined at trial, as

necessary to deter Defendants and others from such outrageous and harmful conduct.

**COUNT VII**
**(Civil Conspiracy – Defendants Vidon and GSG)**

97.     Plaintiffs reallege and incorporate by reference the prior allegations of this

Complaint as if fully set forth herein.

17

98.    Defendants Vidon and GSG have consciously and intentionally agreed to cooperate to engage in the acts of unfair competition, deceptive practices, and Lanham Act violations alleged above.

99.    Defendants have engaged in multiple tortious and wrongful acts in furtherance of the conspiracy, as alleged above.

100.    Wagner has been damaged as a direct and proximate result of Defendants' unlawful and tortious conduct and conspiracy.

101.    Wagner will continue to be damaged and to suffer irreparable harm, including lost sales and profits, customers, customer relationships, market share, competitive advantages, and good will, if Defendants are not enjoined from their ongoing conspiracy.

**WHEREFORE**, Plaintiff Wagner Zip-Change, Inc. respectfully requests judgment in its favor and against Defendants as follows:

A.    Awarding damages pursuant to each of the above claims in favor of Plaintiff and against Defendants in amounts to be determined at trial;

B.    Pursuant to 15 U.S.C. § 1117(a), awarding Plaintiff treble damages for Defendants' willful Lanham Act violations;

C.    Directing an accounting and forfeiture and disgorgement of Defendants' profits;

D.    Granting a temporary restraining order and preliminary and permanent injunctions against Defendants and anyone acting in concert with them from violating Plaintiff's rights or engaging in further acts of unfair competition, including without limitation from using or disclosing Plaintiff's confidential information; contacting or soliciting Plaintiff's customers; engaging in further acts of misrepresentation or deception; or otherwise competing with Plaintiff through unfair, deceptive, or other wrongful means;

E.    Awarding punitive damages in favor of Plaintiff and against Defendants in amounts to be determined at trial;

F.    Awarding Plaintiff pre-judgment and post-judgment interest;

G.    Awarding Plaintiff its attorneys' fees, costs, and other expenses incurred in this action; and

H.     Granting Plaintiff such additional relief as this Court deems appropriate.

Respectfully Submitted,

By: /s/ Bradley P. Nelson
One of the Attorneys for Plaintiff

Bradley P. Nelson
FisherBroyles LLP
225 West Washington St., Suite 2200
Chicago, IL 60606
312-300-4005
brad.nelson@fisherBroyles.com





# VIDON®
## ORIGINAL TRIM CAP

*Available in a variety of colors!*

| | | | |
|---|---|---|---|
| Black | Blue | Bronze | Bronze 313 |
| Brown | Brushed Chrome | Burgundy | Chrome (Mirror) |
| Gold (Shiny) | Green | Hunter Green | Intense Blue |
| Ivory | Metallic Silver | Orange | Paintable |
| Teal | True Red | White | Yellow |

**NEW NAME, SAME GREAT PRODUCT!**

**VIDON'S ORIGINAL TRIM CAP**
is the Sign Industry's standard for adding dimension and structural integrity to your channel letters. With 30+ years of production, Vidon's ORIGINAL Trim Cap can be trusted like the trim cap you have been using for years.

**FEATURES & BENEFITS**
- UR Listed cᴿUus
- Available in ¾", 1" and 2" widths
- Constructed of a thin aluminum sheet laminated in a pigmented coating
- Available in 20 colors
- Adheres to plastic and other surfaces

Available now at **GoGSG.com**!

🖥 **GOGSG.COM**  📞 **800·366·1776**

EXHIBIT A



**WAGNER ZIP-CHANGE INC.**
**3100 HIRSCH ST**
**MELROSE PARK, IL 60160**

## WAGNER ZIP-CHANGE LOYALTY PROGRAM

As a distributor for Wagner Zip-Change, Inc. ("Wagner"), we would like to recognize our relationship with you through implementation of our Loyalty Program. In order to induce you to continue to purchase Wagner Sign Trim Products, Wagner will give Grimco an additional discount on all future purchases of Wagner Sign Trim Products. This 3% discount will be in effect for a period of three years from date of this agreement.

In order to induce Wagner to offer the 3% discount, Grimco agrees to exclusively purchase, distribute and promote Wagner Sign Trim Products. Grimco will not purchase, distribute or promote any other competitive Sign Trim Products during the term of this agreement.

Wagner will extend your payment terms to net 45 days, modifying the net 15 days program currently in place; this will replace the pay early program currently in place. Giving you extended payment terms. This rebate will be paid quarterly.

Wagner reserves the right to raise or lower List Prices upon 30 days' notification. This agreement will be automatically renewed unless either party notifies the other 90 days prior to the expiration date.

Any changes to this Agreement must be made in writing and signed by both parties.

ACCEPTED: _Kevin Houser_
(Distributor)

DATE: _2/18/2015_

ACCEPTED: _Laurie A. Cincotti_ _Renewal_
Wagner Zip-Change Inc.

DATE: _1/29/19_

EXHIBIT B